D. R. Paskie & Co., Inc., Appellant, v. Commercial Casualty Insurance Company, Respondent.

First Department, May 25, 1928.

Insurance — burglary insurance — action to reform policy and to recover — complaint alleges that defendant insured plaintiff prior to its change of place of business, that it notified defendant of change of place of business and change of safes, that defendant failed, through mistake or fraud, to correct policy so as to conform to exact truth, and that through mistake or fraud it failed to note that plaintiff had had prior similar loss — complaint sufficiently alleges cause of action in equity for reformation — plaintiff did not waive right to object by receiving and retaining policy.

The plaintiff seeks to reform a policy of burglary insurance and to recover thereon. This complaint was dismissed below for insufficiency. The complaint alleges that the defendant had issued a prior policy of insurance to the plaintiff; that thereafter it changed the location of its place of business and changed the make of safes; that it requested the defendant to write a new policy covering the new location and the new safes; that the policy, as issued, did not cover the new location or the new safes and that plaintiff called the attention of the defendant to that fact; that the defendant corrected the location of the place of business and subsequently made correction as to the number of the floor of the building in which plaintiff's business was located; but that, through mistake or fraud, it failed to correct the policy as to the make of safes. The complaint also alleges that the plaintiff informed the defendant that it had sustained a prior loss, but that through mistake or fraud the defendant stated in its policy that the plaintiff had not suffered any prior loss.

The complaint sufficiently alleges a cause of action in equity for reformation of the contract of insurance, and it was error for the court to dismiss the complaint for insufficiency.

The plaintiff did not waive its right to object and to ask for a reformation of the policy by receiving it and retaining it in its possession.

Appeal by the plaintiff from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 22d day of December, 1927.

The order appealed from granted defendant's motion, under rule 106 of the Rules of Civil Practice, to dismiss the complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

*Samuel Bitterman*, for the appellant.

*Daniel Mungall*, for the respondent.

Merrell, J. This action was brought to reform a policy of burglary insurance issued by defendant to plaintiff and to recover thereon the amount of the loss sustained by plaintiff under said policy. No answer has been interposed in the action, and the

allegations of the complaint, for the purposes of said motion, are to be taken as true. Plaintiff in its complaint, after alleging the corporate capacity of the parties, alleges in the 3d paragraph of the complaint that on or about February 6, 1926, the defendant, in consideration of the premium paid by the plaintiff, agreed to insure and did insure the plaintiff against all loss by burglary occasioned by the abstraction of any of the plaintiff's property described in said policy, namely, furs and skins, from the interior of any safe or vault described in the schedule mentioned in said policy, and located in the plaintiff's premises or while located elsewhere, after removal therefrom by burglars, by any person or persons making felonious entry into such safe or vault by actual force and violence, and to indemnify the plaintiff for all damage to said safe or vault and to the said property contained therein, and to the premises, including furniture and fixtures therein, caused by such person or persons making or attempting to make such entry into such safe or vault, such insurance to continue for one year from February 6, 1926, to February 6, 1927, and the amount thereof being limited to $15,000; and that in pursuance of said agreement the defendant issued and delivered to the plaintiff its policy of insurance bearing number M.S.6951.

In the 4th paragraph of its complaint the plaintiff alleges that prior to the issuance of said policy the plaintiff occupied the seventh floor in premises 39 West Thirty-sixth street, borough of Manhattan, city of New York, and had used Hall safes Nos. Z18098 and Z18101 in said premises, and that the defendant had in the previous year issued its policy of burglary insurance covering the plaintiff in the said premises and had mentioned therein the said safes; but that prior to February 6, 1926, plaintiff had removed from said premises 39 West Thirty-sixth street to the sixteenth floor of premises 39 West Thirty-second street, borough of Manhattan, city of New York, and had prior to February 6, 1926, disposed of the said two Hall safes and in place and stead thereof had procured and installed in the sixteenth floor of premises 39 West Thirty-second street two new safes manufactured by the Laminated Metal Products Company, Cincinnati, O., bearing numbers 740 and 752, and which safes were also fireproof; and that the defendant was duly notified of such removal of premises and of such installation of new safes and disposal of old safes, and was requested to write its new policy covering the period from February 6, 1926, to February 6, 1927, to cover accordingly; *and that the defendant agreed to do so.*

In the 5th paragraph of its complaint the plaintiff alleges that the said policy of insurance was prepared and written by the

defendant, but that in disregard of the said instructions and statements made by plaintiff, the defendant wrote and prepared the said policy and mentioned the same premises as before, namely, 39 West Thirty-sixth street, seventh floor, and mentioned also the same two Hall safes which the plaintiff had formerly used in said premises 39 West Thirty-sixth street; that thereafter the attention of the defendant was duly called to the said errors and subsequently the defendant changed the address to 39 West Thirty-second street, leaving the other errors in the policy as before; that subsequently the defendant again caused an indorsement to be prepared and added to the said policy changing the floor from the seventh floor to the sixteenth floor, but that the defendant failed to note in the said indorsement or at any other time the change and substitution of new safes or any change of safes, and that such omission was mistake on the part of the plaintiff, and if not mistake on the part of the defendant, then the defendant with intent to defraud the plaintiff omitted to note such change of safes, although the fact of such change of safes was well known to the defendant and its agents; and that it was mutually agreed between the plaintiff and defendant that such change of safe was approved by the defendant, and that such approval should be noted on such policy.

In the 6th paragraph of its complaint the plaintiff alleges that the said policy of insurance as prepared and written by defendant also contained in item No. 14 thereof the statement: " the assured has not sustained any loss or damage nor received indemnity for any loss or damage by burglary, theft or larceny within the last five years except as herein stated ' no exception.' "

In the 7th paragraph of its complaint the plaintiff alleges that the said words, " no exception," at the end of said item No. 14 were inserted in said policy and schedule in violation of the terms of the agreement between the parties and in violation of the direction given by plaintiff to defendant's agent in regard to the issuance of said insurance and contrary to the information given by the plaintiff to the said defendant's agent, and were inserted by mistake on the part of both plaintiff and defendant or by mistake on the part of plaintiff, and if not mistake on the part of the defendant, then the defendant, with intent to defraud the plaintiff, caused the said words to be inserted in said policy; and that no such warranty or answer was given by this plaintiff, but that on the contrary this plaintiff notified the defendant and its agent that within the said period of five years a small loss had been sustained by burglary, theft or larceny from a place of business owned or controlled by plaintiff, but not at its regular place of business; and that such facts were well known to the

defendant and its agents and made known by this plaintiff at and prior to the time of the issuance of said policy; and that such warranty forming part of item No. 14 was inserted therein by mistake of all the parties hereto, and that said warranty was never, in fact, made by plaintiff. Plaintiff further alleges in its complaint that after the issuance of said policy and on the 13th day of December, 1926, and while said policy was in full force and effect, the plaintiff sustained a loss by burglary in its said premises occasioned by the abstraction of furs and skins, the property of the plaintiff, from the interior of said safes located in the plaintiff's premises, by persons who made felonious entry into such safes by actual force and violence and of which force and violence there were physical marks made on such safes by tools, explosives, chemicals or electricity; and that said safes were damaged by reason of such force and violence, which damage was caused by the person or persons making such entry into such safes; and that the amount of such damage exceeded the sum of $7,717.50; that immediately after such loss the plaintiff gave immediate notice thereof to the defendant, as required by said policy, and proof of loss in accordance with the terms of said policy was duly furnished and delivered to the defendant; and that the plaintiff has duly performed all the conditions of said policy and agreement on its part to be performed; that more than three months have elapsed since such proofs, and that no part of said loss has been paid by defendant. Upon such allegations the plaintiff demanded judgment that said policy of insurance be reformed and corrected by inserting in indorsement No. 2 attached to said policy, a statement that in addition to changing item No. 3 to the sixteenth floor, that item No. 8 be corrected by substituting the names of the new safes used by the plaintiff and manufactured by the Laminated Metal Products Company of Cincinnati, O., and that item No. 14 in the schedule of said policy be reformed and corrected by striking therefrom the words, " no exception," and by inserting therein " except a small loss at 5902 Fifth Avenue, Brooklyn, New York," and that the plaintiff have judgment against the defendant for the sum of $7,717.50, besides interest from December 13, 1926, together with the costs and disbursements of the action, and that plaintiff have such other and further relief as may be just and proper.

The court at Special Term granted the motion of the defendant and dismissed the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. We think the Special Term was clearly in error in granting the defendant's motion, and that the complaint stated facts entitling the plaintiff to a judgment reforming said policy of insurance as demanded in

the complaint, and that the plaintiff under the allegations of the complaint would be entitled to recover the amount of its loss. Similar relief to that sought by plaintiff in this action for the reformation of the policy of insurance issued by defendant has been frequently granted by the courts for a mutual mistake in the preparation of the contract of insurance or by reason of mistake on the part of the insured and active or constructive fraud on the part of the insurer. (*Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *LeGendre* v. *Scottish Union & National Ins. Co.*, 95 App. Div. 562; *Mead* v. *Saratoga & Washington Fire Ins. Co.*, 81 id. 282; affd., 179 N. Y. 537; *Schuessler* v. *Fire Ins. Co.*, 103 App. Div. 12; *Ulman* v. *Equitable Life Assurance Society*, 161 id. 708; *Houlden* v. *Farmers' Alliance Co-operative Fire Ins. Co.*, 188 id. 734.) In *Hay* v. *Star Fire Ins. Co.* (*supra*) the plaintiff brought an action to reform a policy of insurance after loss. The Star Fire Insurance Company had issued previous insurance containing no subrogation clause. The plaintiff, Hay, requested a renewal policy for an increased amount and in the renewal policy issued by defendant there was inserted a subrogation clause without any knowledge on plaintiff's part until after the fire occurred. The court directed a reformation of the policy by striking out the subrogation clause, and held that the defendant acted in bad faith in changing the terms of the policy, and that it was its duty to prepare the contract in accordance with the agreement with the insured, and that in materially changing the terms of the contract the defendant was guilty of fraud, and that equity would reform the contract to conform to the agreement of the parties. In *LeGendre* v. *Scottish Union & National Ins. Co.* (*supra*) the policy renewed by the defendant was stated to cover the building of the insured on the " southerly " side of the road, whereas, the property intended to be covered was on the " northerly " side of the road. Plaintiff contended that it was the intention of the parties that he should be insured on his house on the northerly side of the road, and that the word " southerly " was inserted in the policy through an inadvertence. The court directed a reformation and a recovery under the policy, the court holding that the defendant knew of the true location of the plaintiff's house and that notwithstanding such knowledge described its location erroneously and was guilty of fraud requiring a reformation of the policy. In that case the court further held that even assuming the defendant intended to act in good faith and did not know of the location of the property, then there was a mutual mistake in describing its location. In *Mead* v. *Saratoga & Washington Fire Ins. Co.* (*supra*) the policy described the premises as occupied as a dwelling. In

fact, the premises were occupied as a meat market. A loss occurred which the defendant refused to pay, and the plaintiff sued to reform the policy, and the court granted the relief sought. In *Schuessler* v. *Fire Ins. Co. (supra)* the policy contained a warranty that the building covered was occupied exclusively for dwelling purposes by not more than two families. As a matter of fact the premises were occupied by five families. A loss occurred and the insured brought action to reform the policy and was granted the relief sought, the court holding that the warranty was inserted through inadvertence and mistake and without the knowledge or consent of the plaintiff. In that case the Appellate Division was affirmed by the Court of Appeals in 185 New York, 578. A comparatively recent case passing through this court was that of *Ulman* v. *Equitable Life Assurance Society (supra)* which was an action to reform a policy of life insurance. The policy was intended to be issued for the sole benefit of the wife of the assured. In preparing the policy the company made the same payable to her husband in case he survived. Reformation was granted, although there was no finding of fraud or mutual mistake on the part of both parties. The court held that it was not necessary under the circumstances of that case, holding that disobedience by the insurer of the plaintiff's directions constituted a constructive fraud. The complaint before us comes directly within the cases cited, particularly *Mead* v. *Saratoga & Washington Fire Ins. Co. (supra)* holding that the insurance company would not be permitted to avoid a policy upon the ground that the insured failed to notify it of certain facts of which the policy required notice where the company or its agent had full knowledge of those facts at the time of issuing the policy. In the complaint before us it is alleged that the company had knowledge of the change of the safes and of the occurrence of the prior burglary loss. The complaint also comes directly within the decision in *Ulman* v. *Equitable Life Assurance Society (supra)* in that this complaint alleges disobedience on the part of the defendant and its agents in violating the instructions and directions of the plaintiff, and fraud on the part of the defendant. The allegation of the complaint is clear and specific that the plaintiff no longer owned the two old Hall safes, but had procured new Laminated Metal Products Company safes, and that the defendant knew of such substitution, and that the defendant was requested by plaintiff to cover accordingly, and that the defendant *did agree to do so;* that the change of safes was approved by defendant, and that such approval would be noted on the new policy to be issued. Plaintiff further alleges in its complaint that the facts as to the prior burglary loss were made known to the

defendant, but that despite such information and in disobedience to the instructions of the plaintiff the defendant inserted a warranty that there had been no previous burglary loss.   Thus the complaint clearly alleges knowledge of the true facts and agreement to draw the policy in accordance with the facts, and disobedience of the instructions of the plaintiff and the agreement of the defendant amounting to mistake or fraud.   Under such circumstances we think the plaintiff clearly would be entitled to obtain a reformation of the policy and a recovery of the amount of the loss.

A recent case passing through this court was that of *Castellano* v. *American Ins. Co.* (222 App. Div. 169).   In that case the action was brought by a trustee in bankruptcy.   The policy issued by the defendant covered a brick building wherein the bankrupts had their store.   They did not own the building, but did own the stock of merchandise therein.   The evidence showed that they instructed their broker to cover their merchandise and that the broker requested the defendant to issue a policy as a renewal of a previous policy covering merchandise and which had been canceled.   This court held, Mr. Justice PROSKAUER writing, that the bankrupts did not own the realty and that there was no possible reason for the procurement by them of the insurance policy thereon; that they instructed their broker to procure the issuance of a policy covering merchandise and that the broker in turn requested the defendant's agent to issue such policy as a renewal.   This he failed to do, but covered the brick block wherein the merchandise of the insured was located.   This court held in that case that the plaintiff was entitled to a reformation of the policy of insurance so as to cover the merchandise intended, and reversed the judgment of the Special Term dismissing plaintiff's complaint.   In the *Castellano* case the plaintiff had no brick block and there was no reason for procuring an insurance policy thereon.   In the case at bar the plaintiff had no Hall safes, and there was no reason to longer cover them.   In the recent case of *Schenectady Varnish Co., Inc.,* v. *Automobile Ins. Co.* (127 Misc. 751) the court reformed a policy of theft insurance erroneously issued to an individual instead of a corporation which had acquired the property.   The insurance company was notified of the change and agreed to issue the policy in the name of the corporation which had acquired the automobile. The insurance company, however, failed to do so and renewed the policy in the name of the individual, as owner.   Subsequently on claim being made by the corporation the insurance company repudiated the policy, but the court held that the proof not only justified but required the reformation of the policy, and that the

fault was entirely that of the company in not writing the policy as it had agreed. Mr. Justice Heffernan, writing in that case (at p. 754), said: " A policy of insurance is subject to reformation, because of fraud or mistake, by a court of equity in a proper case so as to conform to the actual agreement. This should be so to prevent injustice. Of course, it is not permissible, under the guise of reformation, to make a new contract for the parties. It was the duty of the defendant in this case to issue a valid policy of insurance, correctly stating the name of the owner of the car. Its failure to do so is either the result of a mistake or is tantamount to fraud on its part. A court of equity should not listen to its plea to be relieved from liability under such circumstances. To do so is to encourage unjust and unrighteous defenses."

I think the language of Mr. Justice Heffernan above quoted is peculiarly applicable to the facts as disclosed by the complaint before us, and that the defendant should not be permitted to escape from responsibility arising from its mistake or fraud in the preparation of its policy. In the case at bar the plaintiff alleges that the defendant was notified as to the actual facts and after receiving knowledge with reference thereto prepared the policy entirely different from that agreed upon. The fraud of the defendant need not be such as would form the basis of an action at law. Its disregard of the plaintiff's instructions and its failure to prepare the policy as it had agreed, constitute in law constructive fraud justifying a reformation of the policy. ( *Ulman* v. *Equitable Life Assurance Society*, 161 App. Div. 708.) In *Williams* v. *North German Ins. Co.* (24 Fed. 625) the Circuit Court (at p. 626) said: " Where an instrument fails to represent what both parties intended to have it represent, and one party had drawn up the instrument, and the other party merely accepted it, and the fault was on the part of the party drawing up the instrument, it can be reformed. It would be a harsh rule if a person applying to an insurance agent, who is supposed to know the legal value of the language used in such policies, which he is drawing up every day, and who is supposed to know exactly what is desired, if that agent fails to do that which was intended, it would be harsh to say that the instrument shall not be reformed, and that Chancery shall not give relief." The fraudulent intent need not be proven in an equity action, while at law such intent must be established. (*Squiers* v. *Thompson*, 73 App. Div. 552; affd., 172 N. Y. 652.)

The respondent contends that by receiving and retaining the policy in suit the plaintiff waived any objection thereto. Such we think is not the rule of law. (*Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40; *Hay* v. *Star Fire Ins. Co.*, 77 id. 235; *Bidwell* v. *Astor*

*Mutual Ins. Co.,* 16 id. 263.)   In Cooley's Briefs on Insurance (Vol. 2 [2d ed.], 1446) that textwriter says: " The weight of authority favors the proposition that the issuance of the policy or the preparation of the application with a clause varying from the intention of the parties will itself entitle the insured to a reformation, though the mistake could have been discovered by a perusal of the contract itself.   Thus, in *Equitable Safety Ins. Co.* v. *Hearne,* 20 Wall. 494, 22 L. Ed. 398, affirming 11 Fed. Cas. 965, it was said that the insured had a right to assume that the policy would accurately conform to the preliminary agreement by letter, and to rest confidently to that belief.   The theory, as shown by *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. 235, 240, 33 Am. Rep. 607, is that that party whose duty it is to prepare a written contract in accordance with a previous agreement, and who prepares one materially changing the agreement, and delivers it as in accordance therewith, commits a fraud against which equity will give relief." And at page 1445 the same textwriter says: " The mistake of insured, as before pointed out, almost invariably consists in the active or passive execution of the contract not conforming to his intention; but the defendant often insists that the very acceptance and retention of this contract constitutes such laches as will prevent complainant from securing the relief demanded.   It is evident, however, that the fraud of the underwriter consists in inducing the very thing which is relied on as constituting laches; that is, accepting the contract containing a variant provision."

The respondent cites the cases of *Satz* v. *Massachusetts Bonding & Ins. Co.* (243 N. Y. 385) and *Kwiatkowski* v. *Brotherhood of American Yeomen* (Id. 394) and *Metzger* v. *Ætna Ins. Co.* (227 id. 411) in support of its position.   Neither of the cases reported in 243 New York was brought in equity to reform the contract.   Both were actions at law and no equitable relief was demanded.   The court held that parol evidence was not admissible to vary the terms of written contracts where no reformation was demanded. In the *Kwiatkowski* case the court specifically pointed out the failure to ask for reformation of the contract.   In the *Metzger* case there was no agreement proven as to the issuance of the policy. In the case at bar the parties agreed that new safes were to be substituted and the defendant approved of the change of safes, but, according to the allegations of the complaint, failed to note such approval or to cover the new safes.   There was also an agreement as to the prior loss by burglary which was disclosed to the defendant and no warranty such as was contained in the policy was given by the plaintiff.   The facts here are entirely distinguishable from those in the *Metzger* case.   As in the case of *Pindar* v.

*Resolute Fire Ins. Co.* (47 N. Y. 114), relied upon by respondent, the action was not to obtain reformation of the policy, but was an action at law upon the policy as written, and in *Maher* v. *Hibernia Ins. Co.* (67 N. Y. 283) the Court of Appeals said (at p. 289): " The plaintiff ,having taken the contract in the form of words in which it now appears, cannot, *in an action at law* vary its purport by parol evidence and prove that it does not mean what it says." (Italics are the writer's.)

The cause of action set forth in plaintiff's complaint before us is not at law but in equity for the reformation of the policy of insurance issued by the defendant based upon mistake or fraud. We are, therefore, of the opinion that, assuming the truth of the allegations of plaintiff's complaint, as we must, sufficient facts are therein alleged to justify a reformation of the policy of insurance issued by defendant and a recovery by the plaintiff thereon of the amount of its loss.

The order appealed from should be reversed, with ten dollars costs and disbursements, and defendant's motion denied, with ten dollars costs, with leave to defendant to serve an answer upon payment of said costs.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days from service of order upon payment of said costs.